Case 1:21-cv-00136   Document 25   Filed on 11/15/22 in TXSD   Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
November 15, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| EMILY SEAGO, Plaintiff | § § § § | |
| v. | § § § | Civil Action No. 1:21-cv-136 |
| KILOLO KIJAKAZI Acting Commissioner of Social Security, Defendant | § § § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The Court is in receipt of Plaintiff Emily Seago's Motion for Summary Judgment (Plaintiff's "Motion" or "Motion for Summary Judgment") and Defendant Acting Commissioner Kilolo Kijakazi's Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment (Commissioner's "Motion" or "Motion for Summary Judgment"). Dkt. Nos. 11, 12. For the reasons provided below, it is recommended that the Court: 1) **DENY** Plaintiff's Motion for Summary Judgment; 2) **GRANT** the Commissioner's Motion for Summary Judgment; and 3) **AFFIRM** the decision of the Commissioner.

### I. Jurisdiction

Emily Seago ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), which denied Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter, the "Act"). *See* Dkt. No. 1, 11. The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g).

## II. Factual and Procedural Background[1]

On August 23, 2019, Plaintiff filed an application for DIB, alleging disability beginning on March 26, 2019. TR at 160. Her application was denied initially on December 17, 2019, and upon reconsideration on April 9, 2020. TR at 97, 105. On January 7, 2021, Administrative Law Judge ("ALJ") David Benedict held a hearing and on March 31, 2021, he issued a decision finding that Plaintiff was not disabled. TR at 34, 15-27. Plaintiff filed an appeal with the Appeals Council, which ultimately denied review, making the ALJ's decision final and ripe for judicial review. TR at 1.

Pursuant to 42 U.S.C. § 405(g), on September 10, 2021, Plaintiff filed her Complaint seeking to overturn the decision of the ALJ. Dkt. No. 1. On February 28, 2022, Plaintiff filed her Motion for Summary Judgment, in which she asserts that the ALJ failed to apply the correct legal standard and to support his decision with substantial evidence. Dkt. No. 11. On March 28, 2022, the Commissioner filed her Motion for Summary Judgment, requesting that the Court affirm the ALJ's decision and deny Plaintiff's Motion. Dkt. No. 12. On April 19, 2022, Plaintiff filed her Reply. Dkt. No. 20.[2]

## III. Standard of Review

On review of the Commissioner's denial of benefits, a reviewing court must limit its analysis to: (1) whether the Commissioner applied the correct legal standards; and (2) whether substantial evidence supports the Commissioner's decision. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Substantial evidence is "'sufficient evidence'

---

[1] Counsel for the Commissioner has filed a certified electronic copy of the transcript of the underlying record in this case. *See* Dkt. No. 9. The Court will refer to the transcript with the abbreviation "TR."

[2] On April 19, 2022, Plaintiff initially filed her First Reply prior to filing her Amended Reply, which filing the Court will take into consideration for purposes of her Motion for Summary Judgment. *See* Dkt. Nos., 19, 20.

to support the agency's factual determinations . . . [T]he threshold for such evidentiary sufficiency is not high . . . [It] means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). In applying the substantial evidence standard, a court must limit its review to the record. *Winston ex rel. D.F. v. Astrue*, 341 Fed. Appx. 995, 997 (5th Cir. 2009). It may not reweigh evidence, consider issues *de novo*, or substitute its judgment for that of the Commissioner. *Id*.

## IV. **Establishing Disability**

A claimant is not entitled to benefits under Title II unless the individual has a qualifying disability, as that term is defined by the Act. 42 U.S.C. § 423(d)(1)(A); *Heckler v. Campbell*, 461 U.S. 458, 459-61 (1983). Under the Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]". 42 U.S.C. § 423(d)(1)(A). A sequential five-step process is used to determine whether a claimant qualifies as disabled. *See* 20 C.F.R. §§ 404.1520(a)(4).

At steps one through four, claimants bear the burden of proving that: (1) they have not engaged in substantial gainful activity during the relevant period; (2) they have one or more severe impairments; (3) their impairment(s) qualify as either a listed impairment in the appendix to the regulations, or equivalent to a listed impairment; and (4) if they do not have an impairment or combination of impairments qualifying as a listed impairment or its equivalent, the impairment or combination of impairments they have gives them a residual functional capacity that prevents them from performing past relevant work. 20

C.F.R. § 404.1520(a)(4)(i) – (iv); *Leggett v. Chater*, 67 F.3d 558, 564 n. 2 (5th Cir. 1995).[3] The claimant bears the burden of proving a disability under the first four steps of the analysis. Subsequently, at the fifth step, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). A determination at any step that the claimant is or is not disabled terminates the inquiry. *Leggett*, 67 F.3d at 564.

## V. The ALJ's Decision

At step one, the ALJ found that although Plaintiff had engaged in substantial gainful activity from April to July of 2020, there had been a continuous 12-month period during which she did not engage in substantial gainful activity. TR at 18. At step two, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, multilevel cervical spondylosis, lumbar bulges, herniation and disc displacement, migraine headaches, dermatopolymyositis, inflammatory polyarthropathy, right knee osteoarthritis, left suprascapular neuralgia, trochanteric bursitis of the right hip, and major depressive disorder. *Id.* At step three, the ALJ found that Plaintiff's impairments failed to meet or equal a listed impairment for presumptive disability under the regulations. *Id.* In so finding, the ALJ considered the following listings: major dysfunction of a joint, disorders of the spine, as well as depressive, bipolar, and related disorders. *Id.*

---

[3] While the regulations refer to the assessment of disability as a sequential five-step process, it might be more aptly described as a six-step process because the Commissioner must determine a claimant's residual functioning capacity after step three, but before step four. *See* 20 C.F.R. § 404.1520(e) ("Before we go from step three to step four, we assess your residual functional capacity."); *Kneeland v. Berryhill*, 850 F.3d 749, 754 (5th Cir. 2017).

Before moving to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform sedentary work as defined by 20 C.F.R. § 404.1567(a), subject to the following limitations: she can stand or walk two hours total and sit six hours in an eight-hour workday; she requires a sit/stand option after 30 minutes, for up to five minutes without increased time off task; she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds; she must have no exposure to bright light; she is limited to simple, routine, repetitive tasks of unskilled work; she can maintain attention/concentration for no longer than two-hour blocks of time; and she is limited to a low stress environment. *Id.* at 20. At step four, the ALJ found that Plaintiff could not perform her past relevant work. *Id.* at 25. At step five, the ALJ considered Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert. *Id.* at 26. The ALJ found that Plaintiff could perform other sedentary work existing in significant numbers in the national economy. *Id.*

## VI.   Discussion

In her Motion, Plaintiff contends the Commissioner's decision should be reversed because: (1) substantial evidence does not support the ALJ's RFC determination due to his deviation from the opinions of the state agency consultants and failure to properly consider the opinion of Dr. Heffernan; and (2) the ALJ was unconstitutionally appointed when he presided over the case. The Commissioner disputes these allegations and states that she is entitled to summary judgment as a matter of law. The Court addresses each of Plaintiff's arguments in turn.

### A. *Whether Substantial Evidence Supports the ALJ's RFC Determination*

Plaintiff argues that the ALJ erred in the RFC determination by deviating from the opinions of state agency consultants, Dr. Boulos-Sophy and Dr. Posey, and rejecting the opinion of consultative examiner Dr. Heffernan. The Commissioner contends that the ALJ properly evaluated the medical opinions of record, including the state agency consultants and Dr. Heffernan.

It is the ALJ's responsibility to determine a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). "The ALJ has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." *Gonzalez v. Astrue*, 231 Fed. Appx. 322, 324 (5th Cir. 2007). This includes determining "the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990) (internal citation omitted). "[A]lthough the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987); *see also Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017) (finding that the opinions of treating or examining sources are generally conferred greater weight, but that they can be given less weight with a proper explanation).

For claims filed on or after March 27, 2017, all medical opinion evidence is subject to the same standard of review, under which the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." *See* 20 C.F.R. § 404.1520c(a). Instead, the ALJ shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical

findings using the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, including evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(a), (c)(1)-(5). Supportability and consistency, however, are the most important factors. 20 C.F.R. § 404.1520b(2), 404.1520c(a). Supportability involves the degree to which objective evidence supports the medical opinion, while consistency relates to the constancy between different medical opinions in the record. 20 C.F.R. § 404.1520c(c)(1)-(2).

The ALJ is not required to articulate how he or she considered each of the factors for all of the medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(b)(1)-(2). Rather, the ALJ is generally only required to articulate his or her consideration of the supportability and consistency factors. 20 C.F.R. § 404.1520c(b)(2). "The measuring stick for an 'adequate discussion' is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Luckett v. Kijakazi*, No. 4:20-cv-4002, 2021 WL 5545233, at *4 (S.D. Tex. Nov. 26, 2021) (internal citation omitted).

Here, state agency consultant, Dr. Boulos-Sophy, opined that Plaintiff had the ability "to understand, remember, and carry out detailed but not complex instructions, make basic decisions, attend and concentrate for extended periods, interact with others, accept instructions and respond to changes in a routine work setting." TR at 74. State agency consultant, Dr. Posey, similarly opined that Plaintiff was "able to understand,

7

remember, and carry out detailed but non-complex instructions, make important decisions, attend and concentrate for extended periods, interact with others, accept instructions and respond to changes in work settings." TR at 91. Dr. Boulos-Sophy and Dr. Posey found that Plaintiff had no more than moderate limitations that would restrict her activities involving the ability to understand, remember or apply information; interact with others, concentrate, persist, or maintain pace; and adapt or manage oneself. TR at 73-74, 90. They also found that Plaintiff had a moderate limitation in her ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, and respond appropriately to changes in the work setting. *Id.*

Consultative examiner Dr. Heffernan completed a psychological exam on November 25, 2019. TR at 532. He diagnosed Plaintiff with major depressive disorder and somatic symptom disorder. TR at 535-36. As to her functional capacity, Dr. Heffernan opined, "Emily is able to understand, and learn instructions involving job-related tasks . . . She is not able to apply information, and carry out instructions involving job-related tasks . . . She is able to remember instructions . . . She is not able to sustain concentration and persist in work-related activity at a reasonable pace . . . She is not able to maintain effective social interaction consistently, with supervisors, co-workers, and the public . . . She is not able to deal with normal pressures in a competitive work setting." TR at 536.

With regard to Plaintiff's mental impairment, the ALJ conducted a thorough review of the medical evidence, including the results of a psychological exams conducted in early 2018 and November 2019 (Dr. Heffernan's exam), an in office mental status review with her treating physician in 2021, and physical examinations that incorporated a psychiatric review. The ALJ found the opinions of Dr. Boulos-Sophy and Dr. Posey to

8

be generally persuasive because they had reviewed the evidence in Plaintiff's file and their opinions were consistent with the medical record. TR at 23. The ALJ also found that Plaintiff's daily activities incorporated many of the mental abilities the state agency consultants found to be within her ambit. TR at 24. The ALJ found the opinion of Dr. Heffernan to be unpersuasive because his findings as to Plaintiff's inability to apply information and carry out instructions, sustain concentration and pace, maintain social interaction, or deal with normal pressures at work, were overbroad given the results of his examination and the daily activities reported in Plaintiff's function reports. *Id.* The ALJ, then, found that Dr. Heffernan's opinion "effectively amount[ed] to a categorical elimination of the [Plaintiff's] ability to perform the mentioned activities." *Id.*

Plaintiff argues that the ALJ erred in deviating from the opinions of the state agency consultants without articulating his reasoning. The Commissioner responds that the ALJ need not adopt a medical opinion wholesale where substantial evidence supports the RFC. The ALJ was not required to reiterate the conclusions of the state agency consultants. The RFC is not a medical finding; it is an administrative finding, and the sole responsibility of the ALJ to determine. *Taylor v. Astrue*, 706 F.3d 600, 602-603 (5th Cir. 2012). This determination is based on the ALJ weighing the evidence, resolving conflicts in the evidence, and creating an RFC consistent with the entirety of the record. *Moore*, 919 F.2d at 905.

The opinions of the state agency consultants were considered by the ALJ along with the remainder of the medical record. The ALJ expressly recognized their findings and limited Plaintiff to simple, routine, repetitive tasks of unskilled work; maintaining attention and concentration for short periods; and a low-stress environment. TR at 20. While Plaintiff does not identify a specific limitation that the state agency consultants

9

found which was not included in the RFC, it is clear that the ALJ considered the record as a whole.  In addition, it is consistent with Fifth Circuit precedent that an RFC limited to simple work reasonably incorporates a moderate limitation in concentration, persistence, or pace.  *See, e.g.*, *Herron v. Colvin*, 2017 WL 2615445, at *8 (W.D. Tex. June 16, 2018); *Fitzpatrick v. Colvin*, 2016 WL 1258477, at *11-12 (N.D. Tex. Mar. 31, 2016).  The ALJ appropriately fashioned the mental RFC based on the entire record, including the opinions of the state agency consultants.

Plaintiff also argues that more weight should have been given to the opinion of Dr. Heffernan, who saw Plaintiff once as compared to the state agency consultants, who only reviewed the medical records.  Plaintiff contends that the ALJ failed to properly evaluate Dr. Heffernan's opinion, particularly regarding the factors of supportability and consistency.  While the opinions of treating or examining sources are generally accorded more weight, they can be given less weight with a proper explanation.  *Kneeland*, 850 F.3d at 760; *see also Bradley*, 809 F.2d at 1057 ("[A]lthough the opinion of an examining physician is generally entitled to more weight than that of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.").

The ALJ provided specific and legitimate reasons for finding Dr. Heffernan's conclusions to be unpersuasive.  The ALJ appropriately considered the inconsistencies between Dr. Heffernan's conclusions and the findings in his examination, the medical records, and Plaintiff's self-reporting.  There was evidence from multiple sources, including the state agency consultants, Plaintiff's function reports, and other medical records, which conflicted with Dr. Heffernan's opinion as to the degree in which Plaintiff's mental limitations prevented her from performing tasks in the workplace.  The ALJ

adequately explained his consideration of the supportability factor by stating that Dr. Heffernan's conclusions were extreme given the findings of his examination: "The claimant had been able to concentrate sufficiently to count backwards from 20 by twos and complete a number series adding forward to a previous number. She was able to follow instructions and respond to all requests during the evaluation." TR at 24.

The ALJ's analysis also satisfies the regulation's requirements as to the consistency factor, by finding that there was a high degree of inconsistency between Dr. Heffernan's conclusions and the remainder of the medical record. Although the ALJ did not specifically identify all of the evidence in the record which conflicted with Dr. Heffernan's opinion, the decision included ample discussion of record evidence that did. *See, e.g.*, *Gonzales v. Kijakazi*, No. 4:20-cv-270, 2021 WL 3777181, at *3 (S.D. Tex. Aug. 3, 2021) (affirming the decision of the ALJ because the decision discussed evidence relevant to the consistency and supportability factors). The ALJ also discussed that Plaintiff remained capable of "perform[ing] personal care activities, driv[ing] a car, handl[ing] some household chores, handl[ing] personal financial matters, watch[ing] television, sing[ing], and read[ing]." TR at 24. The Court finds the ALJ's decision adequately accounts for both the supportability and consistency factors. Therefore, substantial evidence supported the determination that Dr. Heffernan's opinion was unpersuasive, as well as the overall RFC findings.

### B. Whether the ALJ was Constitutionally Appointed

Plaintiff alleges that the ALJ who adjudicated her claim was not properly appointed under the Constitution by former Acting Commissioner Nancy Berryhill because her term exceeded the statutory limit pursuant to the Federal Vacancies Reform Act, 5 U.S.C. § 3346 ("FVRA"). The Commissioner responds that, pursuant to the FVRA,

11

an acting official may continue to serve during the pendency of a first or second nomination, even if the nomination was submitted after the initial statutory period for acting service expires.

Berryhill's period of acting service did not violate the term limits set by the FVRA when she ratified the appointment of the ALJ in this case during the pendency of Commissioner Andrew Saul's nomination. The statute provides, "the person serving as an acting officer as described under section 3345 may serve in the office—(1) for no longer than 210 days beginning on the date the vacancy occurs; or (2) . . . once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate." 5 U.S.C. § 3346(a).

The Commissioner does not dispute that Berryhill held the position of Acting Commissioner for greater than 210 days when Andrew Saul was nominated in April of 2018. However, a majority of the courts have held that "§ 3346(a)(2) contains a 'spring-back' provision that enabled [Berryhill] to resume her role as Acting Commissioner as of the date that Andrew Saul was nominated for Commissioner in April 2018." *See Thomas S. v. Comm'r*, No. C21-5213-MAT, 2022 WL 268844, at *3 n.2 (W.D. Wash. Jan. 28, 2022); *Williams v. Kijakazi*, No. 21-cv-141-GCM, 2022 WL 2163008, at *3 (W.D.N.C. June 15, 2022) (collecting cases)). These courts rejected the minority view which Plaintiff urges this Court to adopt, that subsections (1) and (2) of § 3346(a) are mutually exclusive, such that acting service must end upon the expiration of the 210-day time limit if a nomination has not occurred prior to that time. *Cf Brian T.D. v. Kijakazi*, 580 F. Supp. 3d 615, 631 (D. Minn. 2022).

The Court agrees with this authority. The plain language of § 3346(a) establishes when an officer "may serve", rather than setting when such service must end, because

12

nothing in the statute conditions acting service on the submission of a nomination within 210 days. *See Bauer v. Kijakazi*, No. 21-cv-2008-KEM, 2022 WL 2918917, at *7 (N.D. Iowa July 25, 2022); *Williams*, 2022 WL 2163008 at *3. Accordingly, Berryhill had the requisite statutory authority to serve under the FVRA at the time that she ratified the appointment of the ALJ who presided over Plaintiff's case. Thus, Plaintiff's second argument fails.

The Court finds that the ALJ applied the proper legal standards and his decision that Plaintiff was not disabled is supported by substantial evidence.

## VII.  Recommendation

For the foregoing reasons, the undersigned recommends that the Court: 1) **DENY** Plaintiff's Motion for Summary Judgment; 2) **GRANT** The Commissioner's Motion for Summary Judgment; and 3) **AFFIRM** the decision of the Commissioner.

## VIII.  Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

**SIGNED** on this **15th** day of **November**, **2022**, at Brownsville, Texas.

_____
**Ignacio Torteya, III**
**United States Magistrate Judge**